UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED RING DEVICES WITH MAC IDS 34:3E:A4:69:D4:78 AND 34:3E:A4:69:D9:13, 1052 DOUTY HILL ROAD, SANGERVILLE, MAINE, THAT IS STORED AT PREMISES CONTROLLED BY RING, LLC | No. 1:24-mj-00220-JCN<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

**Filed Under Seal Pursuant to Local Rule 157.6(a)**

I, Jonathan L. Richards, being duly sworn, depose and state as follows in support of a search warrant sought pursuant to Federal Rule of Criminal Procedure 41, Title 18, United States Code, Section 3103a, and Title 21, United States Code, Section 879:

## INTRODUCTION

1. I am a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA"). I have been a Special Agent with Maine Drug Enforcement Agency ("MDEA") and its predecessor agencies since 1981. I have been a police officer since 1979. I am a 1981 graduate of the Maine Criminal Justice Academy. During the course of my law enforcement career, I have participated in numerous investigations relating to the distribution of controlled substances, including marijuana and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 856. I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to drug and financial crimes investigations. I have also drafted and executed numerous warrants for residences, cellular devices, and online accounts to search for and seize physical and digital evidence. Specific to digital evidence, based on my training and experience, I am

familiar with how drug trafficking enterprises and individuals associated with them utilize residences, media, and on-line accounts in furtherance of such operations, including through the use of personal home surveillance equipment.

2. This affidavit is submitted in support of an application for a search warrant for information associated with Ring Video Doorbell devices with media access control ("MAC")[1] IDs 34:3E:A4:69:D4:78 and 34:3E:A4:69:D9:13, that is stored at premises controlled by Ring, LLC, ("Ring"), a home security products company owned by Amazon.com, Inc. and headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Ring to disclose to the Government records and other information in its possession, including video content, pertaining to the aforementioned Ring Video Doorbell devices. Such devices were located and identified by Piscataquis County Sheriff's Office ("PCSO") personnel during their execution of a lawfully issued state court search warrant on the premises of 1052 Douty Hill Road, in Sangerville, Maine, on April 25, 2024.

3. I assisted the PCSO in a support capacity in connection with its execution of the search warrant. While present at Sangerville, 1052 Douty Hill Road, on April 25, 2024, I photographed the Ring Video Doorbell devices with MAC IDs 34:3E:A4:69:D4:78 and 34:3E:A4:69:D9:13, copies of which are reproduced below. These Ring Video Doorbell devices were found positioned and installed outside the

---

[1] I know from my review of Ring's law enforcement guidelines and personal experience that the MAC ID for Ring doorbells and security cameras can be found on the back of such devices.

premises at Sangerville, 1052 Douty Hill Road, indicating to me that they were used to monitor and record the activities of those entering and exiting the property.

 

The instant search warrant is sought for evidence, contraband, property, and fruits and instrumentalities of violations of Title 21, United States Code, Section 856 (Drug-Involved Premises) and Title 18, United States Code, Sections 1956-57 (Money Laundering). The applied-for warrant would authorize the search and seizure of information, including video content, associated with the Ring Video Doorbell devices, as more particularly described in **Attachment B**.

4. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and records related to this investigation, and information gained through my training and experience, all of which I believe to be reliable. Therefore, I submit that probable cause exists to search the information described in **Attachment A** for evidence further described in **Attachment B**. My affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

5. The information sought to be searched and seized concerns **the relevant time frame of March 1, 2024 through April 27, 2024**.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).

6. Specifically, the Court is "a district court of the United State . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## GENERAL BACKGROUND CONCERNING RING

7. From my review of publicly available information provided by Ring about its services, including Ring's "Privacy Notice," "Terms of Service," and "Law Enforcement Guidelines," as well as Ring's product description, I am aware of the following about Ring and about the information collected and retained by Ring:

   a. Ring's services enable customers to review, share, and save videos and photos captured by a Ring device and to access such content on a smart phone of personal computer.

   b. Ring collects content and related information that is captured and recorded when its products and services are used, such as video or audio recordings, live video or audio streams, and images.

   c. Ring offers three different subscription plans (Basic, Plus, and Pro), all of which enable video content to be retained for up to 180 days, as well as for the capturing of "snapshots" taken from the device. Recorded videos are from every motion event and every event live viewed by the user via the device. Ring's "snapshot capture feature" enables customers to see what is happening in between motion-

        activated events with recurring photo snapshots taken throughout the day.

d.     Ring videos are stored temporarily in the cloud for up to 180 days. Snapshot photos can be stored for up to 14 days in the cloud.

e.     Ring has access to videos captured by a Ring device only if the user has a current Ring Protect subscription, as detailed above. The subscription enables customers to set the retention period for their Ring device video recordings. Ring retains such videos in accordance with the retention period set by the customer.

f.     Ring Protect plan subscribers can customize their video storage time through the Ring app or Ring.com and adjust the storage time to shorter or longer periods. New devices with a Ring Protect subscription or trial will default to 60 days and devices that are set up with a new owner will default to 60 days of video storage time.

g.     Video storage time does not impact the snapshot capture feature. Snapshot captures are not videos and have their own storage time in the cloud of 7 days with Ring Protect Basic.

## **PROBABLE CAUSE**

8.     Federal law enforcement agencies, including DEA, are investigating individuals, entities, and premises involved in a suspected large-scale coordinated series of illegal marijuana grows in the state of Maine. The drug-involved premises at issue are believed to operate in violation of 21 U.S.C. § 856(a), in addition to illegally cultivating for distribution marijuana in violation of 21 U.S.C. § 841(a)(1). All such premises under investigation—including that at issue here—have been confirmed by the Maine Office of

Cannabis Policy as lacking any licensed status under which marijuana could be legally cultivated under state law. Associated individuals are suspected of conducting domestic money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), sourced by and through proceeds derived from the specified unlawful activity of illegal marijuana cultivation, and relatedly, conducting monetary transactions in criminally derived property in amounts greater than $10,000 in violation of 18 U.S.C. § 1957.

11. Among the premises suspected by federal investigators of maintaining illegal marijuana grows, the investigation identified a residential property located at 1052 Douty Hill Road, in Sangerville, Maine.

12. I have reviewed electrical usage data for Sangerville, 1052 Douty Hill Road, provided by Central Maine Power ("CMP"). Electricity usage records for Sangerville, 1052 Douty Hill Road, show that ALVIN CHEN became a holder of a CMP account for the property for the single month of February 2021. The CMP records show that YING CHEN then became a holder of a CMP account for the property in March 2021, became a holder of another account for the property in June 2021, and remained the holder of both accounts through April 2024. The following combined usage data is shown for YING CHEN's two accounts with CMP:

| Month & Year | Power Usage (kWh) |
|---|---|
| March 2021 | 2,905 |
| April 2021 | 5,684 |
| May 2021 | 6,786 |
| June 2021 | 5,358 |
| July 2021 | 1,543 |
| August 2021 | 22,718 |
| September 2021 | 20,634 |
| October 2021 | 21,374 |
| November 2021 | 18,161 |
| December 2021 | 20,349 |
| January 2022 | 24,667 |

| Month | kWh |
|---|---|
| February 2022 | 25,326 |
| March 2022 | 21,310 |
| April 2022 | 25,395 |
| May 2022 | 20,493 |
| June 2022 | 24,401 |
| July 2022 | 25,965 |
| August 2022 | 24,313 |
| September 2022 | 22,816 |
| October 2022 | 23,725 |
| November 2022 | 21,399 |
| December 2022 | 20,019 |
| January 2023 | 22,572 |
| February 2023 | 21,502 |
| March 2023 | 17,953 |
| April 2023 | 21,832 |
| May 2023 | 15,880 |
| June 2023 | 17,527 |
| July 2023 | 21,434 |
| August 2023 | 18,590 |
| September 2023 | 22,287 |
| October 2023 | 22,221 |
| November 2023 | 19,613 |
| December 2023 | 21,340 |
| January 2024 | 25,062 |
| February 2024 | 23,171 |
| March 2024 | 22,359 |
| April 2024 | 21,921 |

13.     I know based on my training and experience that large amounts of electrical power are needed in support of indoor marijuana cultivation, due to the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers. The electrical consumption, as detailed above, was consistent with large-scale illegal marijuana cultivation. For comparison, according to the Energy Information Administration, the average U.S. household consumes about 10,500 kilowatthours of electricity per year (https://www.eia.gov/energyexplained/use-of-energy/electricity-use-in-homes.php), or roughly 875 kilowatthours per month.

14. I have reviewed publicly available real property records concerning the acquisition and ownership of Sangerville, 1052 Douty Hill Road.

15. The warranty deed for the property recorded with the Piscataquis County Register of Deeds shows that on February 15, 2021, the real property located at Sangerville, 1052 Douty Hill Road, was granted to ALVIN CHEN, of Berlin, Maryland. Piscataquis County Register of Deeds records further show that on August 11, 2021, ALVIN CHEN granted the property by quitclaim deed to Alfinity Capital Holdings, LLC, a Maryland business entity with the same mailing address as ALVIN CHEN. Corporate records for Alfinity Capital Holdings, LLC were obtained from the Maryland State Department of Assessments & Taxation. These corporate records show that Alfinity Capital Holdings, LLC was formed on February 5, 2021, and that the entity's sole authorized person was ALVIN CHEN.

16. Business records were obtained from the closing agent of the Sangerville, 1052 Douty Hill Road, property. A January 31, 2021, copy of the Purchase and Sales Agreement provided by the closing agent for Sangerville, 1052 Douty Hill Road, shows that the agreement was DocuSigned by ALVIN CHEN. The closing agent's records show that the closed sale price of Sangerville, 1052 Douty Hill Road, was $130,000 cash.[2]

17. I have additionally worked in collaboration with state and local law enforcement in connection with the federal investigation, including the PCSO.

18. I have spoken with and reviewed the written reports and search warrant affidavit of PCSO Sergeant Guy Dow, and reference here Sergeant Dow's information and reports.

---

[2] Email correspondence provided by the closing agent indicates that Alvin Chen transferred Sangerville, 1052 Douty Hill Road, to Alfinity Capital Holdings, LLC, which Alvin Chen described in an email dated March 31, 2021, as "my LLC."

a. In November and December 2023, the Code Enforcement Officer for the Town of Sangerville shared with Sergeant Dow that ALVIN CHEN had previously obtained building permits for Sangerville, 1052 Douty Hill Road. The Code Enforcement Officer for the Town of Sangerville further shared with Sergeant Dow the license plate number of a silver Lexus that had been seen at the property, which Sergeant Dow confirmed was registered to YING CHEN at Sangerville, 1052 Douty Hill Road.

b. On about February 18, 2024, Sergeant Dow drove past Sangerville, 1052 Douty Hill Road, and could smell the odor of marijuana when he passed in his vehicle. He noticed increased power lines to the garage, what appeared to be air conditioners attached to the buildings on each side of the garage, and an electrical mast that was attached to the garage.

c. On about March 1, 20, and 29, 2024, Sergeant Dow drove past Sangerville, 1052 Douty Hill Road, and each time could smell the odor of marijuana when he passed in his vehicle.

d. On about March 18, 2024, Sergeant Dow was contacted by an A.E. Robinson Oil Company clerk, who advised that YING CHEN had come in and paid cash on an account, which cash smelled strongly of marijuana.

e. On about April 2, 2024, PCSO personnel photographed at Sangerville, 1052 Douty Hill Road, the silver Lexus registered to YING CHEN.

19. On about April 11, 2024, I observed and photographed at Sangerville, 1052 Douty Hill Road, the silver Lexus registered to YING CHEN.

20. The PCSO secured a state search warrant for Sangerville, 1052 Douty Hill Road. I participated in the execution of the Sangerville, 1052 Douty Hill Road, search warrant by the PCSO on April 25, 2024, in a support capacity, along with Homeland Security Investigations ("HSI") Special Agent Daniel Zaehringer.

21. YING CHEN was located and identified by Sergeant Dow in the garage on the property at the outset of the search warrant that day. The garage was revealed to be a large marijuana growing operation. Several other grow rooms were identified by PCSO personnel as they checked throughout the premises and other outbuildings for additional individuals. A second individual, identified as DUN YING ENG, was found in a shed which had been converted into drying and processing room for the marijuana.

22. In the downstairs portion of the home were several grow rooms of various stages of marijuana, similar to the garage. Each grow room was installed with grow lights, and was supported by extensive electrical wiring and hydroponics systems. In the upstairs of the house there was a bedroom located with a full size bed, along with men's and women's belongings in the same room. In the bedroom there were miscellaneous items scattered about, including two wallets with identification for YING CHEN and DUN YING ENG.

23. There were 1,972 marijuana plants counted on the property, including 727 mature flowering plants. In the shed behind the residence, where DUN YING ENG was located, there was drying marijuana. I stripped the buds of the drying plants into tote boxes. The marijuana in the tote boxes was transferred by Sergeant Dow to a large bag,

which he transported to the PCSO's offices. There, the marijuana was found to weigh approximately 26 pounds.

24. YING CHEN and DUN YING ENG were transported by PCSO personnel to the Dover-Foxcroft Police Department for interviews. HSI Special Agent Zaehringer interviewed each separately. He made available for each individual's use a remote Chinese translation service through his cellular device, which is a contracted HSI resource. Unless otherwise indicated, all statements made were as translated through the remote Chinese translation service. Prior to YING CHEN and DUN YING ENG being interviewed, HSI Special Agent Zaehringer administered *Miranda*, and each confirmed their waiver and agreed to speak with him.

25. YING CHEN stated as follows, in sum and substance:

   a. She had been in Maine for three years, living at Sangerville, 1052 Douty Hill Road, occasionally travelling down to stay in New York. YING CHEN's oldest son owned the home and rented it to her. However, she would not share the name of her oldest son.

   b. When YING CHEN visited New York, she would only stay several days at a time, because she was "hiding" from creditors due to large gambling debts she had incurred at casinos.

   c. YING CHEN admitted to growing marijuana in her house at Sangerville, 1052 Douty Hill Road, for those three years. YING CHEN admitted to growing as much as thirty pounds of marijuana in a given harvest cycle.

   d. Once she grew and processed the marijuana, YING CHEN would sell it to different individuals. YING CHEN sold the marijuana approximately

once each month. Some of the proceeds of her marijuana sales were used to pay her living expenses and the utilities on Sangerville, 1052 Douty Hill Road.

   e. The man who was with her [DUN YING ENG] was a person she hired to work for her. He would follow her orders and do everything she required him to do. He stayed at the property for one to two weeks at a time. He would sometimes drive her silver Lexus.

   f. YING CHEN utilized cell phones and would swap SIM cards between her cell phones. She also had a Ring camera at Sangerville, 1052 Douty Hill Road, which she would monitor via cell phone when she was not at the premises.

26. DUN YING ENG stated as follows, in sum and substance:

   a. DUN YING ENG fathered two sons with YING CHEN. YING CHEN hired him to work at Sangerville, 1052 Douty Hill Road, for $200 per day. He had been working for YING CHEN for approximately two years.

   b. YING CHEN picked him up in New York and brought him to Maine. He had most recently been in New York about one week prior. YING CHEN hired other individuals to grow marijuana.

   c. DUN YING ENG unlocked and shared the contents of his cell phone. It had pictures of insecticides he used on the marijuana. He used his phone to communicate with YING CHEN.

27. The PCSO seized various items at Sangerville, 1052 Douty Hill Road. I have reviewed these items, and noted the following, among other items:

    a. A New York City-issued birth certificate for ALVIN CHEN, showing ALVIN CHEN's mother to be YING CHEN.

    b. A residential lease agreement dated February 21, 2021, between ALVIN CHEN as landlord and YING CHEN as tenant to rent Sangerville, 1052 Douty Hill Road.

    c. A residential lease agreement dated April 24, 2021 between Alfinity Capital Holdings LLC as landlord and YING CHEN as tenant to rent Sangerville, 1052 Douty Hill Road, for a lease term through April 24, 2024.

    d. Unidentified bank records from East West Bank and Bank of America.

    e. January, February, and March 2024 statements for an East West Bank account in YING CHEN's name. The account statements showed point of sale transactions in Dover-Foxcroft, Corinna, Waterville, and Augusta, debits to Starlink Internet and Spectrum, and payments made to ALVIN CHEN.

    f. Geico insurance documentation dated May 2023 addressed to DUN YING ENG, for YING CHEN's Lexus. Numerous prescription medicine bottles issued to DUN YING ENG were also photographed.

    g. Grow room diagrams, ledger entries, and handwritten phone numbers.

28. After concluding the interviews YING CHEN and DUN YING ENG, both were charged Unlawful Trafficking in Schedule Drugs under Maine law. They were transported to the Piscataquis County Jail, where each was booked and later released on cash bail on April 27, 2024.

29. The PCSO provided to me video-recorded footage of DUN YING ENG being bailed and released from the Piscataquis County Jail in Dover-Foxcroft on April 27, 2024. I have reviewed the footage taken on April 27, 2024, which shows a man and a woman in the lobby of the Piscataquis County Jail, who received DUN YING ENG after he posted bail. I have reviewed this footage and compared it against photographs of ALVIN CHEN provided to me by HSI. Based on this review, I note that the man in the lobby resembles ALVIN CHEN, and that the woman in the lobby resembles ALVIN CHEN's spouse (photographs of whom HSI also provided). I therefore believe that it is likely that ALVIN CHEN and ALVIN CHEN's wife traveled to Maine to assist DUN YING ENG in posting bail, and thus, that ALVIN CHEN also likely would have visited the premises at Sangerville, 1052 Douty Hill Road around that same timeframe.

\* \* \* \* \*

30. Based on the foregoing facts, there is probable cause to believe that evidence of violations of 21 U.S.C. § 856 (Drug-Involved Premises) and 18 U.S.C. §§ 1956-57 (Money Laundering) exists as information available to be searched and seized.

31. As detailed above, information stored in connection with the subject Ring account or accounts may provide evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the Government to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, captured video and audio contents, images, comments, and other data collected by products about the surrounding environment can be evidence of who was present at a particular physical location at a relevant time. This geographic and timeline information may tend to either inculpate or exculpate those connected to the crime.

32. Based on the information above, Ring's servers are likely to contain the types of material described above, including stored video and audio content and information concerning the use of Ring Video Doorbell devices MAC IDs 34:3E:A4:69:D4:78 and 34:3E:A4:69:D9:13, at Sangerville, 1052 Douty Hill Road. In my training and experience, such information may constitute evidence of the crimes under investigation.

33. For example, the subject Ring devices were located at a premises actively engaged in large-scale illegal marijuana cultivation. I know from my training and experience, as well as from information provided to me by other experienced federal and state drug investigators, that such extensive marijuana cultivation operations are complex and often require outside coordination provided by multiple involved individuals, rather than a single grower.

34. Therefore, the grow operation at Sangerville, 1052 Douty Hill Road, likely required outside coordination and communication with other participants or co-conspirators, including those associated with other possible illegal marijuana grows in central Maine. I believe that stored video and audio content and information associated with the Ring devices will show the identities and conduct of participants or co-conspirators concerning the illegal grow operations.

35. Specifically, the illegal grow operations at issue required labor, supplies, and transportation in connection with the cultivation, harvesting, processing, and distribution of the marijuana. I believe that stored video and audio content and information associated with the Ring devices will show such activities. In particular, I believe that such content will show either video recordings or still photo captures of the participants in the illegal activity, potentially including ALVIN CHEN, YING CHEN,

DUN YING ENG, and other associated employees, agents, laborers, and individuals known and unknown.

36. Finally, given the for-profit nature of illegal marijuana cultivation, and the likelihood that illicit proceeds were generated from such activities, I believe that stored video and audio content and information associated with the Ring devices relevant to the monetary proceeds of the marijuana enterprise may also be present and subject to search and seizure.

## CONCLUSION

37. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that evidence of such crimes, more fully described in **Attachment B**, are located in the information described in **Attachment A**. I respectfully request that this Court issue a search warrant for the information described in **Attachment A**, authorizing the seizure and search of the items described in **Attachment B**.

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Ring to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, Government-authorized persons will review that information to locate the items described in Section II of **Attachment B**.

39. Following execution of the state search warrant by the PCSO, the U.S. Attorney's Office for the District of Maine submitted a preservation request later in the evening on April 25, 2024, which Ring assigned Amazon Reference Number

CRIM1325614 2024. Upon receipt of a lawful and binding request Ring preserves requested information for up to 90 days. *See* https://ring.com/support/articles/oi8t6/Learn-About-Ring-Law-Enforcement-Guidelines.

40. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The Government will execute this warrant by serving it on Ring. Because the warrant will be served on Ring, who will then compile the requested records at a time convenient to it, and then be reviewed by Government-authorized persons, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

_____
Jonathan L. Richards
DEA Task Force Officer

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Jun 26 2024

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title